IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| **NATHAN ROWAN,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> **LIBERTY MUTUAL GROUP, INC.,** a Massachusetts registered corporation, <br><br> *Defendant.* | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Nathan Rowan ("Rowan" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Liberty Mutual Group, Inc. ("Liberty Mutual" or "Defendant") to stop Defendant from violating the Telephone Consumer Protection Act by making pre-recorded unsolicited calls to consumers as well as to consumers registered on the Do Not call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Liberty Mutual's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Rowan is an East Rochester, New York resident.

2. Defendant Liberty Mutual is a Massachusetts corporation headquartered in Boston, Massachusetts with operational centers throughout the United States. Liberty Mutual conducts business throughout this District and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains its headquarters in this District, and because the wrongful conduct giving rise to this case was directed from this District.

## TELEMARKETING INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3). By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

7. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

8. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

9. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

3

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

13. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

### LIBERTY MUTUAL PLACES PRE-RECORDED SOLICITATION CALLS TO CONSUMERS

14. Liberty Mutual provides insurance coverage to consumers that includes vehicle coverage insurance.[1]

15. Liberty Mutual places cold calls to consumers in order to sell insurance coverage packages, including placing prerecorded calls to consumers without their prior written consent.

16. Employees for Liberty Mutual have complained online about the cold calling they were required to engage in. These complaints include:

> **Sales oriented environment**
>
> Sales Representative (Current Employee) - The Woodlands, TX - August 1, 2017
>
> Management is great and strives to give you the tools you need to succeed. The day, the week, the month is <u>full of prospecting</u> and networking. Everyone needs insurance so <u>everyone is a prospect</u>. The <u>hardest part is cold-calling</u> and waiting for people to decide to purchase. The most enjoyable part is getting to speak with people and explain the products more thoroughly. [2]
>
> **Good place to work**
>
> Sales Representative (Former Employee) - Atlanta, GA - June 11, 2017
>
> Workplace culture was good, very competitive. <u>lots of cold calling,</u> you are responsible for the entire sales process, finding the prospects, writing the business, and servicing the account. [3]

---

[1] https://www.libertymutualgroup.com/about-lm/corporate-information/overview
[2] https://www.indeed.com/cmp/Liberty-Mutual-Insurance/reviews?fjobtitle=Sales+Representative&start=100
[3] *Id.*

4

> **5.0** ★★★★★
>
> Sales Representative | Denver, CO | Jan 17, 2019
>
> **Find and build your Sources**
>
> Great coaching during initial training. You have to really structure in a reliable source to help your phone to ring. <u>Don't be afraid to cold call when the source dries up.</u> [4]

17. In job postings for Outbound Sales Representatives, Liberty Mutual states that the employees will place sales calls from internet generated leads and place outbound sales calls to prospects. Previous cold calling experience is also recommended in the job postings:

> **Outbound Sales Representative**
>
> Liberty Mutual Insurance   Plano, TX
>
> - Advance your career at Liberty Mutual - A Fortune 100 Company!
> - Under limited supervision, <u>places outbound sales calls from internet generated leads.</u>
> - Manages leads by tracking, following up, and closing sales to achieve sales and productivity objectives.
> - Utilizes in-depth coverage and quoting knowledge, performs direct sales and selling techniques for auto and home insurance policies, and conducts front line underwriting risk evaluation in accordance with established rules & guidelines.
> - <u>Places outbound sales calls to prospects.</u> [5]
>
> - <u>Previous cold calling experience is recommended.</u>
> - We value your hard work, integrity and commitment to positive change. [6]

18. Liberty Mutual also generates business by purchasing leads from affiliates[7] and other third-party sites such as MediaAlpha.com.[8]

19. Some of these lead sources do not obtain *prior written consent* from consumers when selling the lead to Liberty Mutual, who then sends them autodialed calls, text messages, and prerecorded calls and voicemails without the required written consent.

---

[4] https://www.simplyhired.com/company/Liberty%20Mutual/?l=Denver%2C+CO
[5] https://jobsearcher.com/j/outbound-sales-representative-at-liberty-mutual-insurance-in-plano-tx-4MQmBE
[6] *Id.*
[7] https://www.libertymutual.com/affiliate-program
[8] https://mediaalpha.com/marketing-partners/

## LEGALITY OF PRE-RECORDED TELEMARKETING CALLS

20. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or pre-recorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

21. Yet in violation of this rule, the Defendant fails to obtain written consent prior to placing pre-recorded solicitation calls to cellular and landline telephone numbers.

22. There are numerous complaints posted online from consumers who have received unsolicited calls from Liberty Mutual, including calls made using a pre-recorded voice message. This is a small sample of those complaints, many of which were addressed directly to Liberty Mutual on the Liberty Mutual Better Business Bureau ("BBB") page:

**BBB Complaints:**

- "**I have no idea how they have my phone number**, but this company continues to call over and over again without leaving messages. **I have called back to request they stop calling, yet here I am still receiving several calls a day!** This is a terrible way to do business, and believe me when I say that I will never do business with this company ever! Stop calling me!!"[9] (emphasis added)
- "Totally disgusted with this company. Simply asked for a quote for insurance and since, have been receiving MULTIPLE emails and phone calls. Have asked them to stop contacting me, but to no avail. Have told them their rates are too high. I WOULD NEVER DO BUSINESS WITH THIS COMPANY."[10]
- "**I am receiving numerous robo text from Liberty Mutual**. I have talked to the customer service department twice and although they say they have removed my info from their system I'm still being contacted. I DO NOT AND HAVE NEVER HAVE HAD A PRODUCT WITH LIBERTY MUTUAL. These text are happening as early as six in the morning and as late as eleven at night. The text are coming from numerous different numbers both showing local area codes as

---

[9] https://www.bbb.org/us/ma/boston/profile/insurance-companies/liberty-mutual-group-0021-89/customer-reviews
[10] *Id.*

6

well as out of state area codes. I have tried to be nice as when speaking to customer service twice but no more."[11] (emphasis added)

**PLAINTIFF'S ALLEGATIONS**

**Liberty Mutual Placed Pre-Recorded Calls to Plaintiff's
Cell Phone Number Without His Prior Written Consent**

23. On August 5, 2020 at 5:55 PM, Plaintiff received an unsolicited telemarketing call from a call center agent who identified that he worked for BestInsuranceRates.com.

24. Plaintiff spoke with the agent who asked if Plaintiff was interested in getting car, rental or health insurance.

25. Plaintiff, in an effort, to identify which company was actually responsible for hiring these telemarketers or benefiting financially from them, feigned interest with this agent and said that he was interested in an auto quote.[12]

26. The agent did not ask Plaintiff for his phone number or whether he would consent to receive autodialed calls, text messages, or prerecorded calls, and the Plaintiff did not provide his written consent for the Defendant Liberty to send him autodialed calls, text messages, or prerecorded calls.

27. On August 5, 2020 at 6:30 PM, 35 minutes after Plaintiff spoke with this agent, Plaintiff received a text message from Liberty Mutual with a car insurance quote using phone number 443-788-4688:

---

[11] https://www.bbb.org/us/ma/boston/profile/insurance-companies/liberty-mutual-group-0021-89/complaints
[12] Foreign telemarketers often identify a random name and website to sound authentic.



28.     On August 5, 2020 at 6:35 PM, 5 minutes after Plaintiff received the text message from Liberty Mutual, Plaintiff received a call on his cell phone from the same phone number the text was sent from – 443-788-4688. Plaintiff missed this call, but a pre-recorded voicemail was left stating:

> "It's Liberty Mutual with your auto insurance quote. We recently just sent you your quote. Press '1' to discuss your quote. Press '2' to schedule a call for later. If you are no longer interested, press '9' and we won't call again."

29.     On August 5, 2020 at 6:50 PM, 15 minutes after Plaintiff received the pre-recorded voice message from Liberty Mutual, Plaintiff received another call from Defendant using phone number 443-788-4688. This call was not answered, but the Plaintiff listened to another pre-recorded voicemail which was left stating:

> "Hello, this is Liberty Mutual. For over a hundred years we've provided secure coverage and saved customers hundreds of dollars in auto insurance. We are ready to help you too. To talk about your quote, press '1'. Press '2' to schedule a call for later. If you are no longer interested, press '9' and we won't call again."

30.     On August 6, 2020 at 10:44 AM, Plaintiff received another call from Defendant to his cell phone using phone number 443-788-4688. Plaintiff was not able to answer this call, but a pre-recorded voicemail as left stating:

> "Hello, this is Liberty Mutual. We just sent you a quote the other day. We understand that finding auto insurance takes time dond is often hard to understand. Press '1' to talk about your quote. Press '2' to schedule a call for later. Press '9' if you are no longer interested."

8

31.     Plaintiff sent a text message stating "Stop" to 443-788-4688 on August 6, 2020 shortly after receiving this last pre-recorded voicemail.

32.     Plaintiff Rowan did not provide Defendant Liberty Mutual with written consent to place autodialed or pre-recorded calls to his cell phone.

33.     Defendant's unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Rowan's use and enjoyment of his cell phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

34.     Seeking redress for these injuries, Rowan, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits pre-recorded calls to residential and cellular phone numbers.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From Calls Made by Liberty Mutual

35.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

> **Pre-recorded Class**: All persons in the United States who from four years prior to the filing of this action through class certification Liberty Mutual called using a pre-recorded voice message for the same purpose that Liberty Mutual called Plaintiff.
>
> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for the same purpose Defendant called Plaintiff.

9

36. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

37. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) whether Defendant placed calls to Plaintiff and members of the Classes using a pre-recorded voice message;

   (b) whether Defendant placed calls to Plaintiff and members of the Classes without first obtaining written consent to make the calls;

   (c) whether Defendant's calls to the Plaintiff and other consumers were for telemarketing purposes;

   (d) whether Defendant's conduct constitutes a violation of the TCPA; and

   (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class

actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to the Class.

40. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rowan and the Pre-recorded Class)**

41. Plaintiff repeats and reallege paragraphs 1 through 40 of this Complaint and incorporates them by reference.

42. Defendant made solicitation calls to Plaintiff and the other members of the Pre-recorded Class using a pre-recorded voice message.

43. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded Class.

44. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of the Plaintiff and the Do Not Registry Class)**

45. Plaintiff repeats and realleges paragraphs 1 through 40 of this Complaint and incorporates them by reference.

46. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

47. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

48. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

49.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rowan, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**NATHAN ROWAN**, individually and on behalf of those similarly situated individuals

Dated: September 9, 2020

By: /s/ Jason Campbell
Jason Campbell Esq.
250 First Avenue, Unit 602
Charlestown, MA 02129
(617) 872-8652
jasonrcampbell@ymail.com

Avi R. Kaufman (Fl Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Pro Hac Vice motions forthcoming*

*Attorneys for Plaintiff and the putative Class*

14